# APPENDIX

# A

Westlaw.

Slip Copy                                                                      Page 1
Slip Copy, 2007 WL 3353729 (E.D.N.Y.)
**(Cite as: Slip Copy)**

Yakin v. Tyler Hill Camp, Inc.
E.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
Sara YAKIN, Plaintiff,
v.
TYLER HILL CAMP, INC., Tyler Hill Corpora-
tion, Timber Lake Corp., Timber Lake Camp West
Corp., Timber Lake Centers, Inc., TLC Kids Group,
Inc., and Timberlake Management Corp., Defend-
ants.
**No. 07-CV-2444 (SJF)(WDW).**

Nov. 6, 2007.

Daniel A. Kalish, White Plains, NY, for Plaintiff.
Costantino P. Suriano, Michael Lane Calder,
Mound, Cotton, Wollan & Greengrass, New York,
NY, Rodney Elliott Gould, Robert C. Mueller, Ru-
bin, Hay & Gould, P.C., Framingham, MA, for De-
fendants.

**OPINION & ORDER**
FEUERSTEIN, J.

### I. Introduction

**\*1** Plaintiff Sara Yakin commenced this action
against Defendants Tyler Hill Camp, Inc, Tyler Hill
Corp., Timber Lake Corp, Timber Lake Camp West
Corp., Timber Lake Centers, Inc., TLC Kids Group,
Inc. and Timberlake Management Corp.
(collectively, Defendants) in the Supreme Court of
the State of New York, County of Nassau, seeking
damages for personal injuries sustained by Plaintiff
in 1999 at a summer camp maintained by Defend-
ant Tyler Hill Corporation. On or about June 18,
2007, Defendant Tyler Hill Corporation filed a No-
tice of Removal to remove the state court action to
this Court, pursuant to 28 U.S.C. § 1441(a) and 28
U.S.C. § 1332(a)(1) and (c)(1). Plaintiff, in turn,
seeks to have the matter remanded to state court
pursuant to 28 U.S.C. § 1447(c). For the reasons set
forth below, Plaintiff's motion is granted.

### II. Background

#### A. Factual Background [FN1]

> FN1. The following facts are taken from
> the pleadings and do not constitute find-
> ings of fact by the Court.

The Plaintiff's complaint stems from injuries
Plaintiff allegedly received on or about July 2, 1999
at the Tyler Hill Camp in Tyler Hill, Pennsylvania.
(Complaint (Compl.), p. 1). According to the affi-
davit of the Executive Director of Defendant Tyler
Hill Corporation, "documents in the possession of
Tyler Hill Camp indicate that as a result of the in-
cident on July 2, 1999, the plaintiff ... fractured her
right clavicle and she was initially treated for her
injury at the Wayne Memorial Hospital in Hones-
dale, Pennsylvania."(Motion to Remand, Exhibit
(Ex.) D, p. 5).

Plaintiff's mother, Jenny Yakin, submitted an affi-
davit in support of Plaintiff's motion to remand stat-
ing that Plaintiff attended the Tyler Hill Camp in
Tyler Hill, Pennsylvania for the years 1996, 1997,
1998 and 1999. While Plaintiff cannot produce the
enrollment application for the 1999 season, she
claims that the terms of agreement for that year
were identical to those of the previous years, and
that the terms of agreement for 1999 contained a
forum selection clause which requires that the ven-
ue for any legal dispute arising out of the agree-
ment "shall be in Nassau County, New
York."(Yakin Affidavit, pp. 1-2). Defendants do
not contest the presence or phrasing of the forum
selection clause in the form contract used by Tyler
Hill Camp in 1999.

#### B. Procedural Background

Plaintiff filed the instant complaint against Defend-
ant on or about May 24, 2007 in the Supreme Court
of the State of New York, Nassau County, index
number 07-9203, seeking damages, costs and dis-
bursements. (Compl., p. 6) On or about June 18,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 2
Slip Copy, 2007 WL 3353729 (E.D.N.Y.)
**(Cite as: Slip Copy)**

2007, Defendant removed the action to this Court, pursuant to 28 U.S.C. § 1441 *et seq.* and 28 U.S.C. § 1332(a)(1) and (c)(1). Plaintiffs now move pursuant to 28 U.S.C. § 1447(c) to remand this action to the state court, claiming that the **forumselectionclause** requires that the action be heard in **NewYorkState** Court in Nassau County.

### III. Discussion

### A. Removal Jurisdiction

A civil action initially filed in state court may be removed by the defendant to federal district court, provided that the district court has original subject matter jurisdiction over the plaintiff's claim, pursuant to 28 U.S.C. § 1441. *See Lupo v. Human Affairs International, Inc.,* 28 F.3d 269, 271 (2d Cir.1994). Removal jurisdiction is strictly construed, and "out of respect for the limited jurisdiction of the federal courts and the rights of states, [courts must resolve] any doubts against removability."*California v. Atlantic Richfield Co. (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.),* 488 F.3d 112, 124 (2d Cir.2007) (citations omitted). On a motion to remand, the removing defendant "bears the burden of demonstrating the propriety of removal."*California Public Employees' Retirement System v. Worldcom. Inc.,* 368 F.3d 86, 100 (2d Cir.2004) (citations omitted).

### B. The Forum Selection Clause

**\*2** At issue is whether the forum selection clause in the enrollment agreement between the parties requires this Court to remand the instant case to state court. The clause in question states as follows:
It is agreed that the venue and place of trial of any dispute that may arise out of this Agreement or otherwise, to which Tyler Hill Camp, or its agents, is a party shall be in Nassau County, New York. (Yakin Affidavit, p. 2).

"It is well established that a forum selection clause may act as a waiver of defendant's right to remove an action to federal court."*John's Insulation, Inc. v. Siska Constr. Co.,* 671 F.Supp. 289, 294 (S.D.N.Y.1987) (citations omitted). However,

"[s]uch a waiver must be clear and unequivocal. If the forum selection clause is ambiguous in that it is susceptible of two reasonable meanings, it will be construed against the party who drafted it."*Id.* (citing *Stern v. Satra,* 539 F.2d 1305, 1310 (2d Cir.1976)). An ambiguous term or phrase is one which is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."*Sirico v. RIH Acquisitions NJ, LLC,* 2006 U.S. Dist. LEXIS 84162 (E.D.N.Y.2006) (quoting *Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp.,* 818 F.2d 260, 263 (2d Cir.1987).

Defendants argue that because the clause does not specify whether it is referring to state or federal court, and because Nassau County is within the jurisdiction of the Eastern District of New York, the **forumselectionclause** does not bar maintaining the matter in this Court. (Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand (Opp.), pp. 4-5). Plaintiff argues that "Nassau County, New York" can only refer to **NewYorkState** Court, noting that "there is no federal courthouse in Nassau County."(Plaintiff's Memorandum in Reply (Reply), p. 1). However, in 1999, at the time the contract was executed, the Eastern District had a courthouse located in Uniondale[FN2] in Nassau County.[FN3]Thus, as of the date of the contract's execution, the "venue and place of trial ... in Nassau County" indicated by the **forumselectionclause** might have referred to either federal or state court.

> FN2. Alan J. Wax, *Court Moves Make Space for Others,*NEWSDAY, November 6, 2000 at C24.

> FN3. This Court may take judicial notice of geography. *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.,* 230 F.3d 549, 556 (2d Cir.2000).

Nevertheless, "(t)he fact that the provision does not specify federal or state court does not make it inval-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 3
Slip Copy, 2007 WL 3353729 (E.D.N.Y.)
**(Cite as: Slip Copy)**

id, but rather allows suit to be brought in either court."*Mooney-Kelly v. Islands Publ'g Co.,* 2002 U.S. Dist. LEXIS 1256 (S.D.N.Y.2002), *citing City of New York v. Pullman Incorporated,* 477 F.Supp. 438 (S.D.N.Y.1979). Ambiguities in forum selection clauses are construed against the drafter. *John's Insulation, Inc.,* 671 F.Supp. at 294. *See also Unity Creations, Inc. v. Trafcon Indus.,* 137 F.Supp.2d 108, 111 (E.D.N.Y.2001) (citing *Albany Savings Bank v. Halpin,* 117 F.3d 669, 674 (2d Cir.1997); *Pullman,* 477 F.Supp. at 443. Since the forum selection clause is ambiguous, and Defendants drafted the clause, Plaintiff's motion is granted.

IV. Conclusion.

**\*3** Plaintiff's motion to remand is GRANTED and this action is remanded to the Supreme Court of the State of New York, County of Nassau. The Clerk of the Court is directed to close this case and, pursuant to 28 U.S.C. § 1447(c), to mail a certified copy of this order to the Clerk of the Supreme Court of the State of New York, County of Nassau.

IT IS SO ORDERED.

E.D.N.Y.,2007.
Yakin v. Tyler Hill Camp, Inc.
Slip Copy, 2007 WL 3353729 (E.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX

# B



Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2004 WL 2093512 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Sarad, Inc. v. Lawson Software, Inc.
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
STARAD, INC., Plaintiff,
v.
LAWSON SOFTWARE, INC., Lawson Software
USA, Inc., Winthrop Resources Corporation,
General Electric Capital Corporation and Wells
Fargo Equipment Finance, Inc., Defendants.
**No. 04 Civ. 5554(GEL).**

Sept. 16, 2004.

Joel Z. Robinson, Law Offices Joel Z. Robinson &
Co., New York, NY, for plaintiff Starad, Inc.
Loretta M. Gastwirth, Meltzer, Lippe, Goldstein &
Breitstone, LLP, Mineola, NY, for defendants
Lawson Software, Inc. and Lawson Software USA,
Inc.
Christopher R. Belmonte, Satterlee Stephens, Burke
& Burke, LLP, New York, N.Y. (Abigail Snow,
Satterlee, Stephens, Burke & Burke, LLP, New
York, NY; R. Christopher Sur, Amy J. Swedberg,
Maslon Edelman Borman & Brand, LLP,
Minneapolis, MN, for defendants Winthrop
Resources Corporation, General Electric Capital
Corporation, and Wells Fargo Equipment Finance,
Inc.

**OPINION AND ORDER**
LYNCH, J.
*1 Plaintiff Starad, Inc., acquired software from
defendants Lawson Software, Inc., and Lawson
Software USA, Inc.(collectively, "Lawson"), under
a lease financing arrangement with defendant
Winthrop Resources Corporation ("Winthrop"),
which was later assigned to another financial
institution, General Electric Capital Corporation. [FN1]
The software evidently did not perform to
Starad's expectations, and Starad accordingly
brought this suit, alleging breach of contract, fraud,

and similar causes of action. Defendants move to
dismiss for improper venue, citing forum selection
clauses in the respective agreements made by Starad
with Lawson and Winthrop. The motion will be
granted.

> FN1. The role of defendant Wells Fargo
> Equipment Finance, Inc., is unclear from
> the complaint.

**DISCUSSION**

The agreement between Lawson and Starad
contains a provision designating Minnesota as the
exclusive forum for disputes between the parties.
According to paragraph 19 of the agreement:
Any action, to confirm an arbitration award or *any
other legal action related to this Agreement, the
Products, or any other dispute between [Starad]
and Lawson,* shall be instituted only in a federal or
state court in the State of Minnesota, USA, and
[Starad] shall submit to personal jurisdiction of
these courts in any such legal action.

(Houlihan Decl. Ex. B, ¶ 19; emphasis added.)
Similarly, if slightly less tightly drafted, the
agreement between Starad and Winthrop provided
that[Starad] and [Winthrop] consent to jurisdiction
of any local, state, or federal court located within
Minnesota. Venue shall be in Minnesota and
[Starad] hereby waives local venue and any
objection relating to Minnesota being an improper
venue to conduct *any proceeding relating to this
Lease Agreement.*At [Winthrop's] sole election and
determination, [Winthrop] may select an alternative
forum, including arbitration or mediation, to
adjudicate any dispute arising out of this Lease
Agreement.

(Belmonte Aff. Ex. A, ¶ 25.)

Such forum selection clauses are enforceable under
both federal and New York law. *Stewart Org. Inc.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 2093512 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*v. Ricoh Corp.,* 487 U.S. 22 (1988); *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972).[FN2] To avoid enforcement of such a contractual provision, the opposing party has a "heavy burden" of showing that adjudication in the contractually-dictated forum "will be so manifestly and gravely inconvenient ... that it will be effectively deprived of a meaningful day in court."*The Bremen,* 407 U.S. at 19,"or that the clause [is] invalid for such reasons as fraud or overreaching,"*id.* at 15.

> FN2. The Second Circuit has held that federal law governs the validity of forum-selection clauses in diversity cases. *Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990). Although this Court is bound by that decision, it should be noted that the matter is not free from doubt. *SeeLicensed Practical Nurses v. Ulysses Cruise Lines,* 131 F.Supp.2d 393, 396-99 (S.D.N.Y.2000). In any event, plaintiff neither challenges the application of federal law nor suggests that the law of any relevant state fails to follow the rule of *The Bremen.*A strong majority of states follow the federal rule presuming the validity of such clauses. *Nurses,* 131 F.Supp.2d at 398 n. 3.

Starad does not attempt to argue that either standard is met. Nor does it dispute defendants' assertion that both forum-selection clauses are mandatory. Instead, it argues that the clauses do not apply to this dispute. Starad maintains that it is suing not based on the provisions of either contract, but on an alleged partnership agreement with Winthrop, and that its claim for breach of contract and fraud arise out of this alleged agreement, not out of either the licensing agreement with Lawson or the lease agreement with Winthrop. Citing promotional literature allegedly used by Winthrop to lure Starad into the software deal, Starad notes that Winthrop's proposal to them asked "Why Winthrop Should Be Starad's Partner," and offered not simply a lease, but a "Value-Added Lease." (P. Mem. 2, citing Compl. ¶ 34.) The essence of Starad's strenuous verbal legerdemain is summed up in the creative argument that "[w]hile 'commercial software and

equipment leasing' providers may have court ' protection' as to issues of venue, no case cited by Winthrop remotely suggest[s] that *'added-value* commercial software and equipment leasing' providers are accorded the same protection."(P. Mem.2-3.)

**\*2** But creative characterizations such as these cannot defeat a valid and binding forum selection clause. First, Starad's citations of Winthrop's promotional literature are unavailing. Putting aside that Winthrop's offer of "partnership" and distinction of its services from mere leases transparently constitute commercial puffery rather than legal characterization, the Winthrop-Starad lease agreement contains an integration clause expressly stating that it "constitute[s] the entire understanding and agreement between [Winthrop] and [Starad] with respect to the lease of the Equipment, superseding all prior agreements, understandings, negotiations, discussions, proposals, representations, promises, commitments and offers between the parties, whether oral or written."(Belmonte Aff. Ex. A, ¶ 25.) Such clauses are routinely given effect both in New York and in Minnesota. *See,e.g.,Jarecki v. Shung Moo Louie,* 95 N.Y.2d 665, 669 (2001); *Lehman v. Stout,* 112 N.W.2d 640 (Minn.1961). Thus, even if Winthrop's literature proposed a literal partnership, the only agreement actually entered between the parties is the lease agreement itself, which contains the forum selection clause.

Second, Starad cannot characterize its way out of its agreement by characterizing its claims as something other than claims arising out of the agreements with Lawson and Winthrop. Neither forum selection clause is limited to causes of action for breach of the agreements themselves. The Lawson agreement establishes Minnesota as the exclusive forum for " any other legal action *related to* this Agreement, [or to]the Products," or indeed to "any other dispute between [Starad] and Lawson."(Houlihan Decl. Ex. B, ¶ 19.) The Winthrop agreement similarly applies to "any proceeding *relating to* this Lease Agreement."(Belmonte Aff. Ex. A, ¶ 25.) This language is clearly broad enough to encompass not merely claims for breach of the agreements, or even claims arising from the agreements, but any claims

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 2093512 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

that so much as relate to the agreement.

Unquestionably, Starad's claims relate to the agreements it had with the various defendants. The suit is about the alleged failure of the products and services for which Starad contracted, and the alleged breach of promises and representations about those services made by the defendants in inducing Starad to enter the agreements. The very first count in the complaint, indeed, is explicitly a claim against Lawson for breach of the very contract that contains the choice of forum clause. The other counts allege breach of the alleged " partnership" with Winthrop; breach of warranties contained in the contracts with Winthrop and Lawson; fraud, deceptive practices and negligent misrepresentation in connection with the solicitation and negotiation of the contracts; and unjust enrichment in connection with the payments made under the contracts. So far as can be discerned from the complaint, there is no relationship between Starad and the defendants *other than* the one that is not merely related to, but centered on, the agreements containing the forum selection clause.

**\*3** Authority as well as logic supports these conclusions. Courts interpreting such clauses have routinely held that contractual forum selection clauses worded as broadly as the ones in this case apply to tort claims as well as contract claims that relate to the subject matter of the contract. *See,e.g., Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1361 (2d Cir.1993); *Bense v. Interstate Battery System of America,* 683 F.2d 718, 720 (2d Cir.1982)

However Starad strains to characterize its lawsuit otherwise, its claims are related to the agreements it entered with Lawson and Winthrop. Starad, a substantial and sophisticated commercial enterprise (Compl.¶¶ 8-9), knowingly and voluntarily promised, as part of those agreements, to bring any litigation that relates to those contractual relationships in Minnesota. It is bound by that promise, and its effort to bring suit in New York must therefore be rejected.

CONCLUSION

Defendants' motions are granted; the complaint is dismissed without prejudice for lack of venue.

SO ORDERED.

S.D.N.Y.,2004.
Sarad, Inc. v. Lawson Software, Inc.
Not Reported in F.Supp.2d, 2004 WL 2093512 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX

# C



Not Reported in F.Supp.2d                                                                                      Page 1

Not Reported in F.Supp.2d, 2001 WL 456250 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
HNY Associates, L.L.C. v. Summit Resort
Properties, Inc.
S.D.N.Y.,2001.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
HNY ASSOCIATES, L.L.C., as
successor-in-interest to Hunter Capital Group,
L.L.C., Plaintiff,
v.
SUMMIT RESORT PROPERTIES, INC. and
Grand Summit Resort Properties, Inc., Defendants.
**No. 01 CIV 0428 HB.**

April 30, 2001.

*OPINION & ORDER*

BAER, J.
*1 HNY Associates, L.L.C. ("HNY") asserted
claims against Summit Resort Properties, Inc.,
Grand Summit Resort Properties, Inc. (collectively,
"defendants") for payment of monies owed under a
financial brokerage agreement ("Agreement").
Defendants move to dismiss the First Amended
Complaint ("complaint") because the Agreement
contains a choice of forum clause that designates
the state and federal courts of California. In
opposition, HNY argues that the choice of forum
clause is "unreasonable," and thus should not be
enforced. In the alternative, HNY seeks transfer of
the action to the federal courts of California.

For the reasons discussed below, defendants Motion
to Dismiss is granted.

BACKGROUND

On January 23, 1997, the defendants and Hunter
Capital Group, L.L.C. ("Hunter"), plaintiff's
predecessor-in-interest, entered into an Agreement
whereby Hunter would locate debt financing for the
construction of hotels at New England ski resorts in

return for a commission. Subsequently, Hunter was
successful in locating $55 million in financing from
Textron Financial, and was paid approximately
$200,000 by defendants.

On January 19, 2001, Plaintiff filed suit to recover
additional commission it claims is owing under the
Agreement. Defendants moved to dismiss on the
basis of a forum selection clause included in the
Agreement that provides "any action or proceeding
based hereon, or arising out of [plaintiff's]
engagement hereunder, shall be brought and
maintained exclusively in the courts of the state of
California or in the United States District Court for
California."(Pl.'s Compl. Ex. A at 4).

DISCUSSION

Motion to Dismiss Standard

In deciding a motion to dismiss under Rule 12(b)(6)
for failure to state a claim upon which relief may be
granted, the court "must accept the material facts
alleged in the complaint as true."*Cohen v. Koenig,*
25 F. 1168, 1172 (2d Cir.1994). Dismissal is
appropriate only where "it appears beyond doubt
that plaintiff can prove no set of facts in support of
the claim which would entitle him to relief."*Conley
v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2
L.Ed.2d 80 (1957).

Forum Selection Clause

The Second Circuit has a strong policy of honoring
forum selection clauses as written, and such clauses
are presumptively enforceable. *Roby v. Corporation
of Lloyd's,* 996 F.2d 1353 (2d Cir.1993). The
presumption of validity may be overcome by a clear
showing that the clause was " 'unreasonable' under
the circumstances ." *Roby,* 996 F.2d at 1363
(quoting *The Bremen et al. v. Zapata Off-Shore Co.,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                  Page 2

Not Reported in F.Supp.2d, 2001 WL 456250 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). The "unreasonableness" exception is construed narrowly, and renders a forum selection clause unenforceable in the following limited circumstances:
(1) if [its] incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party "will for all practical purposes be deprived of his day in court," due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.

*2 *Id.* Here, plaintiff, a sophisticated entity engaged in complex financial services, has not shown that enforcement of the clause would be anything other than reasonable and consistent with the parties' intentions. The facts of the case simply do not fall within any of the four *Roby* exceptions.

First, though the contract formed part of the boilerplate and was not negotiated, the incorporation of the agreement was not the result of fraud.(*Roby* exception "1"). Plaintiff has alleged no facts that suggest fraud, and alleges fraud only to the extent of plaintiff's wholly conclusory allegation that the purpose of the forum selection clause was to deter litigation. As plaintiff itself has conceded, no court has found this to be a reason to refuse enforcement of a forum selection clause, and this Court sees no reason to be the first. *See Composite Holdings, L.L.C. v. Westinghouse Elec. Corp.,* 992 F.Supp. 367 ("[t]here is no reason to disregard this undertaking on the ground that Westinghouse had an evil motive in seeking it as long as Westinghouse did not procure this specific agreement by deception."). Defendants' nexus to California-an issue which forms the basis of plaintiff's motion-has no independent significance and bears on the reasonableness analysis only to the extent that it suggests deception or otherwise indicates unreasonableness. Plaintiff has not alleged that defendants procured the forum clause through deception; in fact, plaintiff alleges in its brief that defendants refused to engage Hunter's services unless Hunter agreed to the forum clause. Hunter may have regretted the term, but it entered into the

contract with eyes open.

Further, the allegation that Hunter suffered from unequal bargaining power is not sufficient to render a choice of forum clause unreasonable. *Licensed Practical Nurses v. Ulysses Cruises, Inc.,* 2000 U.S. Dist. LEXIS 16619 (S.D.N.Y.2000). Since the Supreme Court enforced a choice of forum clause embedded in a contract of adhesion between a large international company and individual passengers, *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622(1991), it is self-evident that the choice of forum in this case-incorporated into a contract between sophisticated parties through which the plaintiff received a fee of nearly $200,000-is not unreasonable simply because it was not a negotiated term. The law does not relieve a commercial entity of an obligation knowingly assumed simply because the complaining party lacked the bargaining leverage to avoid the unwanted contract term.

Second, plaintiff cannot show that enforcement of the clause will deprive plaintiff of its day in court. (*Roby* exception "2.") Plaintiff has not alleged that it is destitute, in fact it received nearly $200,000 in commission. Rather, plaintiff's argument seems to be that litigating this case in California would be relatively inconvenient because all the witnesses in the case are located in New Jersey. However, the relative inconvenience of California as a forum does not warrant this Court's refusal to honor the contact as written. *See, e.g., The Bremen,* 407 U.S. at 17-18; *K.K.D. Imports, Inc. v. Karl Heinz Dietrich GmbH & Co.,* 36 F.Supp.2d 200, 202 (S.D.N.Y.1999) (enforcing agreement requiring the parties to litigate in Germany rather than New York); *Design Strategy Corp. v. Nghiem,* 14 F.Supp.2d 298, 301 (S.D.N.Y.1998) (finding that employee in a contract dispute had not met "heavy burden of proof" to demonstrate that the expense of litigating in New York renders it an "inconvenient forum" so as to set aside a forum-selection clause).

*3 Plaintiff has not attempted to satisfy the third or fourth exceptions of the *Roby* "reasonableness" test by showing either that California law would be fundamentally unfair in resolving this contract dispute, or that the enforcement of forum selection

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 2001 WL 456250 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

clauses contravenes public policy in California. In fact, such an effort would have been futile since California courts also find forum selection clauses to be presumptively valid. *See, e.g., Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A., Inc.,* 118 F.Supp.2d 997 (C.D.Cal.2000).

Thus, the Court is satisfied that the forum selection clause in the Agreement is reasonable and should be enforced.

### Dismiss or Transfer

Defendants moved to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(6) and 12(b)(3). Plaintiff argued that if the Court enforces the forum selection clause it should transfer the case to California pursuant to 28 U.S.C. 1404(a) rather than dismiss. While transfer may be available to the court, dismissal is the more appropriate remedy in this case. *See GMAC Comm. Credit, LLC v. Dillard Dept. Stores, Inc.,* 198 F.R.D. 402, 409 (S.D.N.Y.2001); *Licensed Practical Nurses v. Ulysses Cruises, Inc.,* 2000 U.S. Dist. LEXIS 16619 at *39. Whether a court should dismiss or transfer depends upon which remedy is most consistent with the forum selection clause. Since the forum selection clause here permits the parties to bring suit in the federal and state courts of California, transferring the case would deprive the parties of their contractual right to choose between state and federal court. *SeeGMAC Comm. Credit, LLC* , 198 F.R.D. at 409.[FN1]Thus, dismissal is more consistent with the forum selection clause than transfer.

> FN1.*SeealsoLicensed Practical Nurses v. Ulysses Cruises, Inc.,* 2000 U.S. Dist. LEXIS 16619,*39 (S.D.N.Y.2000)(" [w]hat is clear under the contract, in other words, is not where the case must be brought, since it offers a choice of fora to plaintiff, but where it must not be brought-which includes this court and the New York state courts. Dismissal thus might well be the remedy most in keeping with the intentions of the parties as

provided in the contract"); *GMAC Comm. Credit, LLC,* 198 F.R.D. at 409 (" [a]lthough defendant would be able to remove to federal court an action filed by plaintiff in Arkansas state court, this court cannot and should not rule in anticipation of what defendant may or may not do").

### CONCLUSION

For the aforementioned reasons, this court grants defendants motion to dismiss without prejudice and denies plaintiff's request that the case be transferred.

SO ORDERED.

S.D.N.Y.,2001.
HNY Associates, L.L.C. v. Summit Resort Properties, Inc.
Not Reported in F.Supp.2d, 2001 WL 456250 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX

# D



Not Reported in F.Supp.2d                                                                                      Page 1

Not Reported in F.Supp.2d, 2001 WL 46994 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Fennell Ave. LLC v. America's Sr. Financial
Services, Inc.
S.D.N.Y.,2001.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
FENNELL AVENUE LLC, Plaintiff,
v.
AMERICA'S SENIOR FINANCIAL SERVICES,
INC. Defendant.
**No. 00 Civ. 6214 RLC.**

Jan. 19, 2001.

Brobeck, Phleger & Harrison LLP, New York, New
York, Beth D. Jacob, Aaron M. Zeisler, for the
Plaintiff, of counsel.
Costello, Shea & Gaffney, New York, New York,
Murray Rafsky, for the Defendant, of counsel.

*OPINION*

CARTER, J.
*1 Defendant America's Senior Financial Services,
Inc. moves to transfer this action from the Southern
District of New York to the Southern District of
Florida, pursuant to 28 U.S.C. § 1404(a).[FN1]
Plaintiff Fennell Avenue LLC opposes this motion.

> FN1. Defendant contends that the court
> should also "consider the *forum non*
> *conveniens* aspect of this lawsuit."
> (Defendant's Motion to Transfer Venue ¶
> 30). Since less of a showing of
> inconvenience is needed under Section
> 1404(a) than for a *forum non conveniens*
> dismissal, defendant's argument will be
> considered under Section 1404(a) only. *See*
> *Russell v. Hilton Int. of Puerto Rico, Inc.,*
> 1994 WL 38516, at *7 (S.D.N.Y. Feb. 4,
> 1994) (Wood, J.) (citing *Norwood v.*
> *Kirkpatrick,* 349 U.S. 29, 32 (1955)).

BACKGROUND

Given the scope of the instant claim, a detailed
exploration of the facts is unnecessary. It is
sufficient to note that plaintiff is a Cayman Islands
limited liability company with its principal place of
business in the Cayman Islands. Plaintiff is engaged
in the business of investing private capital.
Defendant is a Florida corporation with its principal
place of business in Florida. Defendant is engaged
in the business of originating, processing and
funding mortgage loans.

In May, 1999 plaintiff entered into a series of
contracts with defendant regarding the purchase of a
convertible debenture. These contracts included a
securities purchase agreement, a debenture
agreement, and a common stock purchase warrant.
Pursuant to these contracts, plaintiff invested a base
amount of $2.5 million in a convertible debenture
with defendant. On August 18, 2000, plaintiff filed
the instant suit in the Southern District of New York
pursuant to 28 U.S.C. § 1332, alleging breach of
contract, breach of implied covenant of good faith
and fair dealing, unjust enrichment, repayment of
money had and received, and conversion.
Defendant now moves to transfer this motion. Plaintiff
opposes this motion, claiming that defendant is
bound by mandatory forum selection clauses in each
of the underlying contracts. Those clauses are
worded identically and read as follows:
Each of the parties consents to the jurisdiction of
the federal courts whose districts encompass any
part of the City of New York, ... in connection with
any dispute arising under this Agreement, and
hereby waives, to the maximum extent permitted by
law, any objection, including any objection based
on *forum non conveniens,* to the bringing of any
such proceeding in such jurisdiction[ ].

(Ex. A ¶ 9a; Ex. B ¶ 14; Ex. C ¶ 10.)

I.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 46994 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

On a Section 1404(a) motion to dismiss, a district court must weigh a number of case-specific factors such as convenience of the witnesses, systematic integrity, and fairness. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). The Supreme Court in *Stewart* acknowledged that "[t]he presence of a forum-selection clause ... will be a significant factor that figures centrally in the district court's calculus." *Id.* The Second Circuit has developed a strong policy of honoring forum selection clauses absent injustice or fraud. *SeeStrategic Mktg. & Commun. Inc., v. Kmart Corp.,* 41 F.Supp.2d 268, 270 (S.D.N.Y.1998) (Carter, J.) (citing *Bense v. Interstate Battery Sys. of Am., Inc.,* 683 F.2d 718, 721 (2d Cir.1982)). In the context of a Section 1404(a) motion, the district court must determine whether the forum selection clause is valid, and whether the clause should be enforced.*Id.* at 271. Once a mandatory choice of forum clause is deemed valid, "the burden shifts to the [movant] to demonstrate exceptional facts explaining why he should be relieved from his contractual duty."*See Weiss v. Columbia Pictures Television, Inc.,* 801 F.Supp. 1276, 1278 (S.D.N.Y.1992) (Leisure, J.). [FN2]

> FN2. Defendant directs the court to the substantive venue law of Florida and New York. However, precedent is clear that in diversity cases, federal common law governs venue disputes involving forum selection clauses. *SeeStrategic Mktg. & Commun. Inc.,* 41 F.Supp.2d at 271.

### II.

*2 In order for the forum selection clauses to be valid, defendant must have had notice of their existence. *SeeAmerican Fin. Servs. Group v. Technimar Indus., Inc.,* 1998 WL 684589, at *2 (S.D.N.Y. Sept. 30, 1998) (Batts, J.). Here, defendant does not deny that it had notice of the forum selection clauses. Further, the forum selection clauses figure prominently in the signed contracts appended to the complaint, and were "the product of arms-length negotiation by experienced and sophisticated businessmen."*M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12 (1972).*See*

*Leasing Serv. Corp. v. Graham,* 646 F.Supp. 1410, 1415 (S.D.N.Y.1986) (Leisure, J.) ("[A] businessman acting in a commercial context, is held to have understood the consequences of his having signed [contracts], which designate New York as the appropriate forum for any action arising thereunder."). The court therefore finds the forum selection clauses valid.

### III.

Next, the court must inquire whether the forum selection clauses should be enforced. Defendant asserts that it will be seriously inconvenienced and prejudiced by a trial in the Southern District of New York because its thirteen material witnesses are located in Florida. The court has found that "[m]ere inconvenience and expense of traveling are not themselves adequate reasons to disturb the parties' contractual choice of forum."*Strategic Mktg. & Commun. Inc.,* 41 F.Supp.2d at 274. Moreover, defendant has not explained why the presentation of the testimony of any of the witnesses by deposition would be inadequate. *Seeid.*

Defendant further contends that Florida was the locus of a substantial part of the events at issue. In *Elite Parfums, Ltd. v. Rivera,* 872 F.Supp. 1269, 1272 (S.D.N.Y.1995) (Baer, J.), the court found that despite the fact that a contract contemplated performance in Texas, and the negotiation, signing and alleged breach of contract occurred in Texas, these factors were insufficient to warrant overriding a forum selection clause on a Section 1404(a) motion.

Here, defendant alleges that the negotiations underlying the contracts took place exclusively in Florida, consideration for the debenture arrived from outside the United States directly to Florida, and the alleged non-performance of the contracts took place in Florida. Furthermore, defendant asserts that neither party has any contacts with New York, whereas the defendant's state of incorporation and primary place of business is in Florida. Even if these allegations were true, a fact disputed by plaintiff, they would not warrant overriding the forum selection clause. Where, as here, plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 3

Not Reported in F.Supp.2d, 2001 WL 46994 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

presents a valid forum selection clause, and asserts
that substantial negotiation, drafting and money
transfer occurred in and through New York, and
that defendant is licensed to do business in New
York, New York is a valid forum.

Defendant has therefore failed to demonstrate
exceptional circumstances that would require relief
from its contractual burden, and the forum selection
clause, as agreed to by the parties, should control.

## CONCLUSION

*3 For the foregoing reasons, defendant's motion to
transfer venue is denied.

IT IS SO ORDERED.

S.D.N.Y.,2001.
Fennell Ave. LLC v. America's Sr. Financial
Services, Inc.
Not Reported in F.Supp.2d, 2001 WL 46994
(S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX

# E



Not Reported in F.Supp.2d                                                                                                Page 1

Not Reported in F.Supp.2d, 2004 WL 421793 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

**C**
Mercury West A.G., Inc. v. R.J. Reynolds Tobacco
Co.
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
MERCURY WEST A.G., INC., Plaintiff,
v.
R.J. REYNOLDS TOBACCO COMPANY,
Defendant.
No. 03 Civ. 5262(JFK).

March 5, 2004.

Law Offices of Edward Weissman, New York, New
York, Edward Weissman, Jan Marcantonio, for
Plaintiff, of counsel.
Jones Day, New York, New York, Harold K.
Gordon, Bonnie L. Hemenway, for Defendant, of
counsel.

*ORDER & OPINION*
KEENAN, J.

*Procedural Background*

*1 Plaintiff Mercury West A.G., Inc. ("Mercury
West") brought this action seeking compensatory
and punitive damages from Defendant R.J.
Reynolds Tobacco Company ("Reynolds").
Mercury West accuses Reynolds of breaching a
series of contracts, being unjustly enriched at
Mercury West's detriment, tortuously converting
one of Mercury West's trademarks and willfully
engaging in deceptive business practices. Mercury
West initiated this action by filing a Summons and
Complaint in New York State Supreme Court.
Reynolds timely removed the action to this Court.
Reynolds subsequently brought the present motion
to dismiss the Complaint pursuant to Rule 12(b)(3)
of the Federal Rules of Civil Procedure ("Rule
12(b)(3)") and 28 U.S.C. § 1406(a) (" § 1406(a)").

*Facts*

According to Mercury West, in October of 2001,
Reynolds's Manager-Purchasing Operations
Gregory Feron ("Feron") approached Mercury
West executives about doing business with Mercury
West. Reynolds, claims Mercury West, was
interested in Mercury West's familiarity with
overseas markets. In particular, Reynolds was
interested in taking advantage of Mercury West's
contacts in Russia, the Republic of Georgia and the
Far East to market Reynolds's cigarettes in those
regions. *See* Godelman Aff. ¶ 6. Reynolds disputes
Mercury West's characterization of the initial
contacts between the two companies, both with
regard to how they were initiated and their purpose.
*See* Feron Decl. ¶ 4. In light of the fact that this is
a motion to dismiss, however, Mercury West, as the
party in opposition to the motion, is entitled to have
all of the relevant facts viewed in the light most
favorable to it. *See New Moon Shipping Co., Ltd. v.
Man B & W Diesel AG,* 121 F.3d 24, 29 (2d
Cir.1997).

Shortly after October, 2001, Mercury West and
Reynolds began some type of business relationship.
Representatives from each company attended
meetings in Moscow, Vienna and Washington, D.C.
in 2002 in order to discuss business possibilities. *See*
Godelman Aff. ¶ 6. It appears as though the
relationship centered on Reynolds's production and
sale of cigarettes to Mercury West for Mercury
West's distribution in targeted overseas markets
under the trademark of "Senator". Exactly how it is
claimed the business arrangement was structured is
unclear from Mercury West's submissions.

In April of 2002, Feron informed Mercury West
that Reynolds wanted Mercury West to enter into a
Master Purchasing Agreement ("MPA"). Mercury
West Vice-President Alex Godelman claims that
Feron told him the agreement was one that
Reynolds required all of its business partners to sign
and was little more than a mere "formality." *See id.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 421793 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

¶ 11.On April 15, 2002, Godelman signed the MPA on Mercury West's behalf. According to Godelman, he signed the agreement without seeking the assistance of counsel. *Seeid.*L. Joe Inman, Reynolds's Vice-President of Manufacturing, signed the MPA on his company's behalf.

*2 Among the provisions included in the MPA is what is commonly referred to as a forum selection clause. In pertinent part, Section 11.3, entitled " *Jurisdiction,"* states:
The parties hereto hereby agree that all actions or proceedings initiated by any party hereto arising directly or indirectly out of this Agreement shall be litigated only in the Superior Court for Forsyth County, North Carolina with a request that the case be assigned to the Honorable Ben F. Tennille (or his successor), The Special Superior Court Judge For Complex Business Cases. Each party hereto hereby expressly submits and consents in advance to such jurisdiction and venue in any action or proceedings commenced by any party hereto in such Court; agrees that jurisdiction and venue is proper in such Court; ... Each party hereto waives any claim that said court is an inconvenient forum or an improper forum based on lack of venue.

Relying on this clause, Reynolds contends that this Court is not the appropriate forum for Mercury West's causes of action to be prosecuted. By this motion, Reynolds seeks to enforce the forum selection clause and have Mercury West's complaint dismissed.

*Discussion*

I. *Proper Procedural Framework*

The initial issue that must be resolved is to determine what is the proper framework within which to examine this motion. A motion to dismiss a complaint based on the enforcement of a forum selection clause does not fit neatly within any of the mechanisms prescribed by the Federal Rules of Civil Procedure or the United States Code. Although several courts have confronted this question, a clear and definitive answer has not emerged. *SeeNew Moon Shipping Co., Ltd.,* 121 F.3d at 28 (finding a lack of consensus on this issue among circuit courts); *Jockey Int'l, Inc. v. M/V " Leverkusen Express",* 217 F.Supp.2d 447, 450 (S.D.N.Y.2002) ("The Second Circuit has not decided what rule governs dismissals based on a forum selection clause."). Motions to enforce forum selection clauses have been brought pursuant to each of Rules 12(b)(1), 12(b)(3), 12(b)(6) and § 1406(a). Each provides a logical basis for supporting such a motion, but none provide a perfect fit for a party seeking to enforce a forum selection clause. Importantly, the scope of materials a court may consider in reaching its decision differ depending upon which provision governs. Nonetheless, courts of this circuit have made clear that courts do possess the ability under either Rule 12(b)(3) or § 1406(a) to dismiss a case upon a motion that a forum selection clause renders venue in a particular court improper. *Id.;Tech, Express, Inc. v. FTF Bus. Sys. Corp.,* 2000 WL 222628 (S.D.N.Y. Feb. 25, 2000).

The instant motion is framed as both a Rule 12(b)(3) and § 1406(a) motion and each side has offered supporting materials that go beyond the original pleadings. Were the Court to deem the motion one governed by Rule 12(b)(6), consideration of materials not included as part of the pleadings would be prohibited. Mercury West has not objected to the Court considering the additional materials or treating the motion as one brought pursuant to Rule 12(b)(3) or § 1406(a). The motion will, therefore, be treated as such and all of the supporting materials will be considered.

II. *The Forum Selection Clause is Valid and Enforceable*

*3 At one time forum selection clauses were routinely greeted with hostility by courts that viewed them as attempts to "oust" courts of proper jurisdiction. Driven by the growth and development of international commerce, this is no longer the case. *SeeBense v. Interstate Battery Sys. of Am., Inc.,* 683 F.2d 718, 721 (2d Cir.1982) (stating that " any such 'general hostility' towards forum-selection clauses is today simply a vestigial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

remainder of an outmoded doctrine."). In fact, in what represents a 180 degree turn, now when confronted with forum selection clauses courts presume them to be valid. See *Ferraro Foods, Inc. v. M/V Izzet Incekara*, 2001 WL 940562, at *2 (S.D.N.Y. Aug. 20, 2001). The seminal case in terms of the current presumption in forum selection clauses' favor is *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). In *Bremen*, the Supreme Court held forum selection to be *prima facie* valid and enforceable unless the party opposing the clause can demonstrate that enforcement would be unreasonable under the circumstances. *Id.* at 10; *see also Roby v. Corp. of Lloyds*, 996 F.2d 1353, 1362 (2d Cir.1993); *Baosteel Am., Inc. v.. M/V "Ocean Lord"*, 257 F.Supp.2d 687, 688 (S.D.N.Y.2003).

Initially after *Bremen* was decided there existed some debate as to whether its holding was limited solely to the field of admiralty cases. The Second Circuit has since determined that the *Bremen* holding applies with equal force to cases brought pursuant to diversity jurisdiction. *See Jones v. Weibrecht*, 901 F.2d 17, 18 (2d Cir.1990) ("[The *Bremen*] rule has been extended in this and other circuits to diversity and other non-admiralty cases." ); *see also Tech. Express, Inc.*, 2000 WL 222628, at *2. Moreover, the Second Circuit has developed a policy of honoring forum selection clauses. *See Strategic Mktg. & Communications, Inc. v. Kmart Corp.*, 41 F.Supp.2d 268, 270 (S .D.N.Y.1998). Underlying this policy is an understanding that forum selection clauses carry an economic benefit to at least one of the parties that is typically reflected in the overall economics of the contract. As such, these clauses are bargained for terms of the contract that deserve to be honored by courts. *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 594 (1991); *Ins. Corp. of Hanover, Inc. v. Latino Americana de Reasequros, S.A.*, 868 F.Supp. 520, 529 (S.D.N.Y.1994).

Parties seeking to avoid enforcement of a forum selection clause bear the heavy burden of making a " strong showing" in order to overcome the presumption of validity from which these clauses benefit. *See New Moon Shipping Co., Ltd.*, 121 F.3d at 29. More specifically, the party must convince the court that enforcement would be unreasonable

and unjust, or that the clause is the result of fraud or overreaching. *See Id.*; *Bense*, 683 F.2d at 721-22; *Jockey Int'l, Inc.*, 217 F.Supp.2d at 451; *U.S. West Fin. Servs., Inc. v. Cipriano*, 1990 U.S. Dist. Lexis 7364, *5-6. A forum selection clause may be found unreasonable or unjust if its enforcement will for all practical purposes deprive the complaining party of its day in court due to the grave inconvenience or unfairness of the selected forum, or if the clause contravenes a strong public policy of the forum state. *Roby*, 996 F.2d at 1363; *Ins. Corp. of Hanover, Inc.*, 868 F. Supp at 529.

*4 Mercury West contends that enforcement of this particular selection clause would be unreasonable because it would effectively eliminate the company's opportunity to obtain a remedy. According to Mercury West, it is a small and financially destitute company unable to litigate in North Carolina. As discussed, Mercury West must demonstrate that requiring it to litigate in North Carolina would be so gravely difficult and impractical as to effectively deprive it of its day in court. *See Bremen*, 407 U.S. 18 (stating that when a party has contracted to litigate in a forum "it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.").

Mercury West has failed to convince the Court that it could not prosecute its claims in North Carolina. Simply claiming financial distress does not warrant setting aside a valid forum selection clause. *See generally Envirolite Enters., Inc. v. Glastechnishe Industrie Peter Lisec Gesechaft M.B.H.*, 53 B.R. 1007 (S.D.N.Y.1985) (refusing to find that enforcement of a forum selection clause would be unreasonable simply because the plaintiff was bankrupt). Although certain costs relative to travel and temporary lodging would have to be incurred, those costs can be controlled and are not significant enough to be considered a barrier to the prosecution of its claims. Mercury West was able to send representatives to North Carolina to negotiate and do business with Reynolds. *See* Blynn Aff. ¶ 5. Litigating claims in North Carolina that it alleges to be worth at least $7.5 million should not be so

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 421793 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

onerous as to deprive the company of its day in court, even in Mercury West's claimed weak financial circumstances.

In addition to being unreasonable, Mercury West alleges the clause should be deemed a product of overreaching. According to the plaintiff, the forum selection clause is the result of a bigger, more powerful company exerting its strength to take advantage of an unequal business partner in a lesser bargaining position. This is an argument that carries extremely little weight with the Court. Mercury W est is a corporation engaged in significant international commerce. Despite what Mercury West seems to want this Court to believe, there is no evidence that Mercury West is a naive company unschooled in the ways of business that was taken advantage of.

Of equally little weight is Mercury West's argument that enforcement of the forum selection clause would be unjust because the company was directed to sign the contract as a mere "formality" required of those doing business with Reynolds. For starters, presumably Mercury West has been involved in enough business contracts to know that it should carefully review the terms of any contract it is asked to sign. *Cf.* Feron Decl. ¶ 4. Being told that the contract represented a mere formality does not translate into an example of fraud or overreaching. Even if the Court were inclined to view terming the contract a "formality" an act akin to fraudulent inducement-which the Court is by no means inclined to do-in order to invalidate the forum selection clause, the clause itself would have to have been the product of fraud. *SeeGen. Elec. Capital Corp. v. Mehta,* 2002 WL 511553, *2, n .6 (S.D.N.Y. Apr. 4 2002); *Envirolite Enters., Inc.,* 53 B.R. at 1012. Mercury West has not alleged that the forum selection clause is the product of fraud.

*5 It also should be noted that the forum selection clause was in no way hidden from Mercury West or buried in contract minutia. Rather, the clause was its own paragraph, set-off by a title clearly indicating its purpose. *See* MPA ¶ 11.3, attached as Ex. A to Blynn Aff. Far less clear and significantly more camouflaged forum selection clauses have been upheld by courts. *See, e.g.,Carnival Cruise Lines,*

*Inc.,* 499 U.S. 585 (1991); *Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7 (2d Cir.1995); *Gen. Elec. Capital Corp.,* 2002 WL 511553. The plainly obvious presence of the provision within the contract was enough to both provide Mercury West with the requisite notice and to have prompted Mercury West's option to reject the provision or the contract had it so desired. *SeeComputer Servs. Group, Inc. v. Apple Computer, Inc.,* 2002 WL 575649, at *1 (S.D.N.Y. Apr. 16, 2002). Mercury West did not object to the forum selection clause, and did sign the MPA.

To ignore the forum selection clause even though it is unambiguously set forth in the body of a binding contract between two corporations would be the unreasonable and unjust act. Not only would such a decision allow Mercury West to pick and choose which contract terms it wants enforced, it would deprive Reynolds of a bargained for benefit of the MPA. *SeePrinceton Pike Park, Inc. v. High-Tec, Inc.,* 1990 U.S. Dist. Lexis 8163, at *15-16 (S.D.N.Y. July 3, 1990). Even assuming, as Mercury West claims, the terms of the MPA-and specifically the forum selection clause-were not the subject of actual bargaining, the clause is still valid and enforceable. The forum selection clause need not have been the subject of express negotiation to be considered a bargained for benefit of the contract. A forum selection clause included in a non-negotiated form contract has the power to bind parties. *SeeKarl Koch Erecting Co., Inc. v. N.Y. Convention Ctr. Dev. Corp.,* 838 F.2d 656, 659 (2d Cir.1988) (holding that the absence of negotiation over the terms of a contract does not render a forum selection clause unenforceable); *Computer Servs. Group, Inc.,* 2002 WL 575649, at *1 (stating that a forum selection clause can bind the contracting parties even where the agreement is a form contract and not subject to negotiation); *Strategic Mktg. & Communications, Inc.,* 41 F.Supp.2d at 272 (same); *seealsoKarl Koch, Inc. v. Midwest Elastomers, Inc.,* 148 F.Supp.2d 245, 247 (E.D.N.Y.2001) ("Where a company conducts business in many states, a non-negotiated forum selection clause included in a sales contract may be enforced even if it was not the subject of bargaining."). All the Court need believe in order to find the forum selection clause valid is that the clause and the contract are the products of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 421793 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

an arm's-length business agreement. *SeeBremen,* 407 U.S. at 10;*Medoil Corp. v. Citicorp,* 729 F.Supp. 1456, 1459 (S.D.N.Y.1990). Such is the case with respect to the MPA, regardless of the fact that it is essentially a form contract and was presented to Mercury West as a formality required of doing business with Reynolds.

*6 Although Mercury West does not offer it as an explicit argument, the company does make a few references to the fact that North Carolina is the home venue of Reynolds. This fact is not determinative, nor is it even persuasive in the present circumstance. Mercury West bears the heavy burden of having to show that the selected forum would treat it unfairly and deny it a chance to gain a remedy. *SeeRoby,* 996 F.2d at 1363. Simply alleging a belief that the forum would be hostile to its claims because the forum is its opponent's home forum does not satisfy this burden. *SeeMedoil Corp.,* 729 F.Supp. at 1460. Mercury West does not dispute that the Superior Court for Forsyth County, North Carolina "offer[s] an attractive court system," capable of handling this matter. Godelman Aff. ¶ 23. Considering that Mercury West concedes the attractiveness of the selected forum, it is reasonable to believe-as Reynolds suggests-that the forum was selected as a capable court with a degree of expertise in the types of claims that might be raised. So long as a party had such a good-faith basis in selecting the forum it did, selecting its home forum is acceptable. *SeeGMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.,* 198 F.R.D. 402, 408 (S.D.N.Y.2001); *Composite Holdings, L.L.C. v. Westinghouse Elec. Corp.,* 992 F.Supp. 367, 370 (S.D.N.Y.1998).

Having considered each of Mercury West's arguments as to why the forum selection clause should be deemed invalid and enforcement considered unreasonable and unjust, the Court believes the clause to be valid and enforceable. The plaintiff's arguments are not persuasive.

### III. *The Forum Selection Clause Covers Mercury West's Causes of Action*

Mercury West argues that even if the forum

selection clause is valid, it is not relevant to the causes of action raised in this action. It is Mercury West's contention that the instant claims for relief do not relate to the MPA, but rather are based upon prior agreements between the company and Reynolds and torts committed by Reynolds. According to the plaintiff, prior to engaging in the MPA, Mercury West and Reynolds had entered into other agreements. It is the violation of those prior contracts that Mercury West claims form the basis of its breach and deceptive business practices actions. The other cause of action in the complaint is for tortuous conversion, a claim the company does not believe to be within the scope of the forum selection clause.

The notion that the breach and deceptive business practices claims are predicated upon prior agreements is fatally flawed by the fact that no prior agreements exist. The MPA contains a merger clause that explicitly establishes that the MPA represents the entirety of Mercury West and Reynolds's contractual relationship and that any prior agreements are thereby superseded. Section 11.4, entitled "Entire Agreement; Amendments," of the MPA states:
This Agreement, including Appendices and Exhibits hereto, constitutes the entire agreement between the Parties, and supercedes any prior oral and written agreements entered into by the Parties. There are no prior or contemporaneous agreements or representations affecting the same subject matter other than those expressly stated in this Agreement.

*7 This clause, in no uncertain terms, states that no other agreements exist. In addition, case law holds that if one agreement expressly supersedes others, any prior agreements relating to the same subject matter are, by definition, extinguished. *See Health-Chem Corp. v. Baker,* 915 F.2d 805, 811 (2d Cir.1990); *Kreiss v. McCown De Leeuw & Co.,* 37 F.Supp.2d 294, 301 (S.D.N.Y.1999).

Even if it were to ignore the merger clause, the Court would be hard-pressed to accept Mercury West's argument in the face of a near complete lack of evidence as to the existence of actual prior contracts. Mercury West has not offered any legitimate evidence that any such agreements

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 421793 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 6

existed prior to the MPA. The letters attached to the Godelman affidavit are demonstrative of the fact that Mercury West and Reynolds had some sort of business relationship that pre-dated the signing of the MPA, but they are not examples or proof of contracts. Although Mercury West is entitled to the benefit of all inferences, its assertions must have a basis in fact supportable by evidence.

Turning to the tort claim, forum selection clauses are not restricted solely to breach of contract claims. *See Roby*, 996 F.2d at 1361 ("There is ample precedent that the scope of clauses similar to those at issue here is not restricted to pure breaches of the contracts containing the clauses."). In some circumstances, forum selection clauses are construed to cover tort claims. *See New Moon Shipping Co., Ltd.*, 121 F.3d at 33. "[T]he circuit courts have held that a contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract or if the tort claims involve the same operative facts as a parallel claim for breach of contract."*Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (internal quotations and citations omitted).

In the instant case, it is readily apparent that the causes of action are the products of the contractual relationship contemplated in and memorialized by the MPA. The claimed tort relates directly to the subject of the MPA-the production of cigarettes marketed under the trademark of "Senator". In fact, Mercury West ties its claim regarding the conversion of the Senator trademark to the termination of the MPA. *See* Godelman Aff. ¶ 14. With respect to the contract and unjust enrichment claims, the MPA covers the same countries as those involved in Mercury West's causes of action. *See* MPA Ex. A; Godelman Aff. ¶ 12. The undeniable nexus between the claims and the subject matter of the MPA bring this action within the purview of the forum selection clause. This reality is underscored by the fact that the forum selection clause covers actions arising both "directly" and "indirectly" from the MPA. *See* MPA § 11.3. Artful pleading should not be allowed to frustrate the purpose and benefit

of a forum selection clause. *See Direct Mail Servs. Ltd.*, 2000 WL 1277597, at *6.

### IV. A § 1404(a) Analysis is Not Warranted

*8 Mercury West premises a great deal of its opposition to Reynolds's motion on the argument that New York is a more convenient forum than North Carolina. Mercury West attempts to usher the Court through an analysis of the factors set forth for the consideration of a motion to transfer pursuant to 28 U.S.C. § 1404(a). This is not a motion to transfer pursuant to 28 U.S.C. § 1404(a), however. The instant motion is one to dismiss and enforce a valid forum selection clause.

As already discussed, courts in this circuit have recognized a court's ability to dismiss a complaint under Rule 12(b)(3) and § 1406(a) when the court is not an appropriate forum by reason of a valid and enforceable forum selection clause. Because this motion is one to dismiss and the Court has found a valid and enforceable forum selection clause to exist, a § 1404(a) analysis is not warranted. Furthermore, even if the Court were inclined to transfer, which it is not, compliance with the forum selection clause would require a transfer to the Superior Court for Forsyth County, North Carolina. Remands aside, federal courts do not have the power to transfer a case to a state court. Section 1406(c) makes apparent that "district", as used in § 1406, does not include state courts. Thus, having found the forum selection clause to be valid and enforceable, the Court has no option but to dismiss. This dismissal, however, is without prejudice so as to allow Mercury West to bring the suit in the proper, designated forum.

### Conclusion

For the reasons set forth herein, the Complaint is hereby dismissed. This dismissal is without prejudice toward refiling in the Superior Court for Forsyth County, North Carolina. The Court orders this case closed and directs the Clerk of Court to remove it from the Court's active docket.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 7

Not Reported in F.Supp.2d, 2004 WL 421793 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**


SO ORDERED.

S.D.N.Y.,2004.
Mercury West A.G., Inc. v. R.J. Reynolds Tobacco
Co.
Not Reported in F.Supp.2d, 2004 WL 421793
(S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.